UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAM SMITH, )<br>)<br>Petitioner, )<br>v. )<br>)<br>DUANE MacEACHERN, )<br>(Superintendent), )<br>)<br>Respondent. ) | CIVIL ACTION<br>NO. 09-10434-NMG |

# REPORT AND RECOMMENDATION ON PETITIONER'S
# MOTION FOR AN EVIDENTIARY HEARING, AS AMENDED

February 21, 2018

DEIN, U.S.M.J.

## I. INTRODUCTION

The petitioner, Sam Smith, was convicted by a Suffolk County jury on June 12, 2001 of murder in the first degree in the shooting death of Steven Gaul, and was sentenced to life imprisonment. He filed a motion for a new trial on June 24, 2004, which was denied on February 10, 2006. Smith's conviction, and the denial of his motion for a new trial, were affirmed by the Massachusetts Supreme Judicial Court ("SJC") in an opinion dated January 11, 2008. Commonwealth v. Smith, 450 Mass. 395, 879 N.E.2d 87 (2008). On January 24, 2008, Smith sought a rehearing from the SJC, which was denied on April 4, 2008. (SA I:656-69).[1] He

---

[1] The record below is included in the multi-volume Supplemental Answer ("SA") filed by the respondent (Docket Nos. 14, 102) and will be cited by [volume]:[page].

then sought a writ of certiorari from the United States Supreme Court, which was denied on October 6, 2008. Smith v. Massachusetts, 555 U.S. 893, 129 S. Ct. 202, 172 L. Ed. 2d 161 (2008).

On March 20, 2009, Smith filed *a pro se* petition for a writ of habeas corpus in this court, which has been amended twice since counsel was appointed. (Docket Nos. 1, 20, 110-1). Therein, Smith alleged, *inter alia*, that the prosecutor's exercise of a peremptory challenge to exclude a transgendered individual violated the Equal Protection Clause of the Fourteenth Amendment (Ground One). The SJC had addressed this issue in its opinion, and reviewed the colloquy between counsel and the trial judge relating to the peremptory challenge in detail. Smith, 450 Mass. at 404-07, 879 N.E.2d at 95-97. In denying Smith's appeal, the SJC concluded that "the factual ambiguity surrounding the juror's sex, transgendered status, and sexual orientation, as well as the motive or reason for the prosecutor's challenge, **combined with the absence of an objection from defense counsel when the challenge was made**, impeded the trial judge's ability to draw an inference that purposeful discrimination had occurred." Id. at 407, 879 N.E.2d at 97 (emphasis added).

Smith has consistently challenged the SJC's conclusion that no objection to the challenge had been made by trial counsel. (See, e.g., Docket No. 27 (4/27/10 Affidavit of Sam Smith in Support of Motion to Stay)). By reviewing the audio tape of Smith's jury selection (which has since been misplaced by the trial court), habeas counsel was able to establish that a Batson[2] challenge to the Commonwealth's exercise of a peremptory challenge had, in fact,

---

[2] In Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), the Supreme Court "outlined a three-part burden-shifting framework, a 'Batson challenge,' through which a defendant can dispute the government's use of peremptory strikes as racially motivated and demonstrate an equal protection violation." United States v. Casey, 825 F.3d 1, 10 (1st Cir. 2016). In J.E.B. v. Alabama ex rel. T.B., 511

[2]

been made by defense counsel at side bar.  (See Docket No. 43 (3/2/11 Affidavit of Kevin Barron, Esq.)).  On March 30, 2011, this court granted Smith a stay of the habeas proceedings to allow him to pursue the matter further in state court.  (Docket No. 50).

Smith pursued a number of motions for a new trial and other related motions in the state court, both before the motion judge as well as before Single Justices of the SJC.  As a result of these efforts, the state court recognized that "it is now conceded that trial defense counsel did, after all, make an explicit 'Batson' objection in . . . a timely manner."  (SA IV:126-28).  Nevertheless, the state court refused to reopen Smith's case or allow him a new trial.  (See id.).  Rather, the Single Justices of the SJC ruled twice that the alleged failure to object was not the only basis of the SJC's initial decision, and the fact of the objection did not raise a "new" or "substantial" issue warranting post-conviction relief.  (See SA IV:168-69 ("the discovery of the transcription error does not alter our previous disposition"); IV:468-73).  As a result of these rulings, this court lifted the stay of the habeas proceedings.  (Docket No. 95).

This matter is presently before the court on Smith's "Renewed Motion for Evidentiary Hearing" (Docket No. 179), as amended by "Petitioner's Supplemental Memorandum Re Renewed Motion for Evidentiary Hearing" (Docket No. 192), which was filed by successor counsel.  By this motion, Smith is asking this court, yet again, to send this case back to state court for a Batson hearing.[3]  Specifically, as new counsel has explained:

---

U.S. 127, 144-46, 114 S. Ct. 1419, 1429-30, 128 L. Ed. 2d 89 (1994), the Supreme Court extended this holding to prohibit peremptory challenges based solely on gender.

[3] In his renewed motion (Docket No. 179), Smith is asking for an evidentiary hearing in this court.  As explained in the Supplemental Memorandum, however, "[a]lthough prior counsel states in the motion that the evidentiary hearing should be held before this Court, Mr. Smith avers that the correct forum can only be the state court."  (Docket No. 192 at 1).

> The purpose of the hearing in state court would be to show that there was not just one but two objections voiced by the defense to the prosecutor's use of a peremptory challenge to prevent a transgendered individual from serving on the jury. Both the state courts (a Superior Court justice and two justices of the Supreme Judicial Court acting as single justices) and the state prosecutor have now acknowledged, based on the corrected trial transcript, that there was in fact an adequate objection under *Batson v. Kentucky*, 479 U.S. 79, 106 S. Ct. 1712 (1986) made during a sidebar conference. However, the petitioner, Mr. Smith, who was present and witnessed the proceedings that were held in open court, is certain that there was an objection voiced by his counsel to the prosecutor's peremptory challenge of the prospective juror that occurred in open court even before the sidebar was held. Mr. Smith states that he had the right as a matter of due process to proceed with his appeal based on an accurate record and that he can prove that this right was denied if permitted a hearing.

(Docket No. 192 at 1-2).

For the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that Smith's renewed motion for an evidentiary hearing, as amended, be DENIED. Even assuming that Smith is able to credibly establish that another objection to the Commonwealth's peremptory challenge was made, it would not affect the outcome of this case. The SJC has already rejected the argument that Smith's constitutional right to equal protection was denied in connection with the trial judge's handling of the challenge to the potential juror, even assuming that defense counsel had raised a timely objection. Whether defense counsel raised one or two objections is irrelevant to the SJC's analysis. Moreover, Smith has not established any reason why a further stay of the habeas proceedings is

appropriate. The habeas record is sufficiently complete for this court to address the merits of the habeas petition. No stay or remand to the state court is warranted.[4]

## II. STATEMENT OF FACTS

This case has an extremely complicated procedural history, and more details can be found in this court's earlier Report & Recommendation ("R&R") on Petitioner's Motion to Amend his habeas petition (Docket No. 119) and on Petitioner's Second Motion to Stay (Docket No. 167). The facts that follow are limited to those that are relevant to the pending motion for an evidentiary hearing.

### The SJC Decision

As noted above, Sam Smith, is currently serving a life sentence for first degree premediated murder in the 1991 shooting death of Steven Gaul. In an opinion dated January 11, 2008, the SJC affirmed his conviction and the denial of his first motion for a new trial. Therein, the SJC addressed Smith's contention that "the prosecutor improperly used a peremptory challenge to remove a juror who may have been either homosexual or transgendered, in violation of the equal protection clause and the defendant's constitutional right to a fairly representative jury." Smith, 450 Mass. at 404, 879 N.E.2d at 95. The SJC described the relevant facts as follows:

> The empanelment process included individual questioning by the judge of all the jurors. After the juror in question responded to the judge that he was a hairdresser's assistant and worked in a beauty salon, the prosecutor attempted to challenge the juror for cause because, the prosecutor said, the juror had some "identification issues," seemed to be a man dressed as a woman, and appeared to have breasts. The defense counsel responded,

---

[4] Nothing herein is intended to reflect any view as to the merits of the habeas petition. That issue has yet to be reached because of the numerous requests for a stay or extensions filed by the petitioner.

> "I see a man who maybe at best I would argue might be a homosexual. And if the Commonwealth's intention is to challenge on the homosexuals...."
> The judge immediately denied the challenge for cause, and the prosecutor promptly exercised a peremptory challenge. The following exchange then occurred:
>
>> DEFENSE COUNSEL: "Your Honor, I'd like to put on the record that I'm beginning to see a pattern on the basis of the Commonwealth with the exclusion of a homosexual, white male. So I want to put that on the record as well."
>>
>> THE JUDGE: "Okay. You've put it on the record."
>>
>> DEFENSE COUNSEL: "For the Court's consideration. Thank you."
>>
>> THE PROSECUTOR: "Just so I may be crystal clear, there's absolutely no pattern. I don't even know of any even homosexuals that have been before us."
>>
>> "This particular gentleman was dressed, in my opinion, like a female and he has breasts and so forth. And, frankly, I was just looking at this from a common sense point of view."
>>
>> "This guy has a lot of identification issues, and I don't—"
>>
>> THE JUDGE: "Well, first of all you have a right to present a challenge. You can challenge a person for any reason, as long as it's not illegal. It's very simply put."
>
> Defense counsel stated nothing further about the juror, and the empanelment procedure moved to the next juror.

Id. at 404-05, 879 N.E.2d at 95-96.

The SJC then ruled that it was not going to reach the previously undecided question "whether the exercise of a peremptory challenge to remove a juror because of his or her sexual orientation or because the juror was transgendered would violate the guarantees of art. 12 or the equal protection clause" "because the record does not supply the necessary factual foundation." Id. at 405, 879 N.E.2d at 96. In particular, the Court ruled:

[6]

> The exchange between counsel and the judge during the voir dire of the juror reflects confusion in several respects. Defense counsel appeared to object to the prosecutor's supposed use of a peremptory challenge to remove the juror on the basis of homosexuality, while the prosecutor seemed clearly to focus on what he perceived to be the transgendered appearance of the juror. None of the judge's comments offers additional insights about the juror, and thus we have no information about the juror's sex or transgendered status beyond the superficial observation that the juror appeared, at least to one person, to be a man with breasts, dressed as a woman. The juror did not identify himself as homosexual, and there was no evidence offered from any other sources on this issue. Further adding to the ambiguity, defense counsel did not make an explicit objection to the challenge, and instead only "put on the record" that she was "beginning to see a pattern" of removing white male homosexuals.

Id. In light of the fact that "defense counsel neither objected to the prosecutor's challenge nor asserted that a pattern of improper exclusion actually had been established[,]" the Court ruled that "counsel did not trigger an obligation on the judge's part to make a finding whether the presumption of propriety was rebutted." Id. at 406, 879 N.E.2d at 97. In addition, the Court found that there was no independent obligation on the part of the judge to make an inquiry "given the factual uncertainty in this case about what, if any, discrete 'grouping' the juror might fit into[.]" Id. Finally, the SJC rejected Smith's equal protection argument on the grounds, as quoted above, that "[t]he factual ambiguity surrounding the juror's sex, transgendered status, and sexual orientation, as well as the motive or reason for the prosecutor's challenge, combined with the absence of an objection from defense counsel when the challenge was made, impeded the trial judge's ability to draw an inference that purposeful discrimination had occurred." Id. at 407, 879 N.E.2d at 97.

### The First Stay of the Habeas Proceedings

The habeas petition as filed by Smith *pro se*, and amended by his first counsel, alleged that the court's handling of the potential juror described above violated Smith's constitutional

[7]

equal protection rights.  (Docket Nos. 1 & 20 at Ground One).  Smith's counsel withdrew due to an irretrievable breakdown of communication with his client, and this court appointed new counsel, Kevin Barron, to represent Smith on October 20, 2010.  (<u>See</u> Docket Nos. 27, 31-34). On March 2, 2011, Smith, through counsel, filed a motion to stay these habeas proceedings. (Docket No. 41).  The motion was supported by an affidavit from Attorney Barron (Docket No. 43), who attested that he had gone to Suffolk Superior Court and listened to the tape of the June 5, 2001 jury selection in Smith's case (¶ 2) and had heard defense counsel say "<u>Batson</u> violation" after the Commonwealth had stated that the potential juror has an "identification issue" and that "the person seems to -- appears to have breasts and things along those lines. . ." (¶¶ 3-4).

Smith sought a stay of proceedings in this court to pursue the matter in the state court on the grounds that "[b]y mentioning *Batson*, trial counsel alerted the trial Court to the need for an inquiry on the prosecutor's discriminatory purpose as evidenced by his statement that the juror had 'identification issues' and was a 'man with breasts and that sort of thing'." (Docket No. 42 at 2).  Such further state court review was needed, according to Smith, because the SJC had not reached the merits of his equal protection claim due to trial counsel's alleged failure to object.  (<u>Id.</u> at 2-3).  On March 30, 2011, this court allowed Smith's motion to stay, over the Commonwealth's objection, and Smith was ordered to file periodic status reports regarding the progress of his state court proceedings.  (Docket No. 50).

## The State Court Proceedings

Smith's case was actively litigated in the state court following remand, and this court will address only the most relevant motions.  Suffice it to say, Smith's efforts to obtain a new

trial, or an evidentiary hearing, were unsuccessful. Moreover, during the course of these state court proceedings, it came to light that the audio tape had been misplaced by the court after it had been reviewed by Attorney Barron. (See Docket No. 128-1 (1/5/16 Affidavit of Attorney Barron)).

A hearing was held on December 19, 2011 on Smith's motion for collateral relief before the motion judge who had decided the first motion for a new trial.[5] In denying the motion in an order dated December 21, 2011, the motion judge stated that "it is now conceded that trial defense counsel did, after all, make an explicit 'Batson' objection in what seems to this judge to have been a timely manner." (SA IV:126-27). Nevertheless, the motion judge determined that the matter was best decided by the SJC (or the habeas court) since "it is still undecided if a jury challenge based on a potential juror's homosexuality or transgendered status is a violation of Article 12 or the Equal Protection clause; there remains a presumption that a jury challenge is proper; the record remains unclear whether the challenged juror was male, female, homo-sexual or transgendered; and it is impossible to determine the prosecutor's motive for the challenge." (Id. at 127). On December 3, 2012, Smith filed an application for leave to obtain further appellate review ("ALOFAR") with a single justice of the SJC pursuant to Mass. Gen. Laws ch. 278, § 33E. (SA IV:2).

The Single Justice of the SJC denied the ALOFAR on March 29, 2013, finding that the application presented no "new and substantial question." (SA IV:168). The Justice acknowledged the transcription error, and noted that the "discovery serves to correct our

---

[5] The trial judge had retired before Smith filed his first motion for a new trial. (See SA IV:126).

previous understanding (based on the mistaken transcript) that defense counsel did not make an explicit Batson objection." (Id. at 169). Nevertheless, the Single Justice concluded that Smith's gender discrimination claim had "received full consideration" in his direct appeal, and did not need to be revisited, especially since "and contrary to the defendant's contention, this court did not reject the defendant's gender discrimination claim based solely on waiver grounds." (Id.). Since the absence of an express objection "was merely one factor in the court's analysis[,]" the "transcription error" did not require a change to the Court's decision. (Id.).

Smith continued to pursue his efforts to obtain a Batson hearing in state court. (See, e.g., SA IV:460-62). Despite a lack of success, on September 27, 2013, Smith, through counsel, filed a third motion for collateral relief, which repeated his request for a Batson hearing. (SA IV:196). The motion judge heard oral argument, and issued a decision on May 22, 2014 denying the motion. (Id. at 196-98). The motion judge found "no reason to, in effect, reconsider my denial of the original Motion for a Batson Hearing[,]" especially in light of the March 29, 2013 Single Justice decision. (Id. at 197).

Smith filed a second ALOFAR with a Single Justice of the SJC pursuant to Mass. Gen. Laws ch. 278, § 33E on June 23, 2014. (SA IV:172). In a memorandum of decision dated December 4, 2014, his request was again denied on the basis that the issue raised was neither "new" nor "substantial." (SA IV:468). As the Single Justice found:

> Here, the sole issue raised in the defendant's motion is not "new." Indeed, it was addressed, in detail, in the full court's decision on the defendant's direct appeal, as well as being the key issue in his second and third motions for a new trial, and in the single justice's decision denying his first gatekeeper petition.

[10]

> The issue is also not "substantial."  While the defendant insists that the trial judge had no discretion to deny his request for a <u>Batson</u> hearing, that is not the case.  As the full court noted in its decision, the challenged juror did not identify as homosexual or transgender (the defendant's asserted reason for the necessity of a <u>Batson</u> hearing in his second and third motions for a new trial), and the prosecutor's stated reasons for his peremptory challenge are varied and unclear.  Moreover, the record of the voir dire proceedings shows that the defendant did not seek a hearing on the ground that there had been a pattern of exclusion of all members of the venire who were homosexual.

(<u>Id.</u> at 470-71).  The Single Justice further concluded that "[i]n its decision affirming the defendant's conviction, the full court addressed, in depth, both the defendant's due process and equal protection claims concerning this peremptory challenge." (<u>Id.</u> at 472).  In so concluding, the Single Justice acknowledged that the record had been "clarified" and that the defendant had requested a <u>Batson</u> hearing at trial.  (<u>Id.</u> at n.1).  Nevertheless, the Single Justice concluded that no relief was warranted since "the full court had decided the issue based on considerations other than waiver."  (<u>Id.</u>).

## The Return to Federal Court

Based on the state court rulings, this court terminated the stay so that the habeas proceedings could continue. (Docket No. 95).  On April 29, 2015, Smith (through Attorney Barron) moved to amend his habeas petition to update the record to include the proceedings that had ensued in state court, and to add a new claim that the prosecutor failed to disclose <u>Brady</u> material, namely information about an allegedly pending joint federal and state investigation involving two percipient witnesses.  (Docket Nos. 110, 111).  After hearing, this court recommended that the motion be allowed to the extent it clarified the existing claims, but denied as to the proposed additional new claim.  (Docket No. 119).  This court's R&R was adopted by the District Judge on November 30, 2015.  (Docket No. 126).  Thereafter, Smith

sought leave to stay the instant proceeding to pursue the Brady claim in state court, on the basis that he had newly discovered evidence of a joint state and federal investigation. (Docket No. 143). This court issued a detailed R&R on February 17, 2017, recommending that the stay be denied. (Docket No. 167). This recommendation was adopted by the District Judge on March 28, 2017. (Docket No. 173).

On May 15, 2017, Attorney Barron filed the "Renewed Motion for Evidentiary Hearing" which is the subject of this decision. (Docket No. 179). Therein, he was seeking an evidentiary hearing in this court on the Batson challenge. His request was based on Smith's contention that, in addition to the Batson objection made at sidebar, he recalls that the Commonwealth had objected to the potential juror in open court, and that lead defense counsel had objected to the Commonwealth's objection. (Id.). In particular, Smith recalls that after the juror in question was found indifferent by the judge, "[t]he prosecutor became agitated and slammed his pen down onto the table as he said 'Challenge'." (Docket No. 183-2 (3/22/17 Smith Affidavit) at ¶ 2). Smith then nudged his trial counsel who said "Objection your Honor." (Id. ¶¶ 3-4). "The prosecutor then responded without any remark from the trial Judge, 'He has an identity crisis'" at which point the prosecutor requested a side-bar conference. (Id. ¶¶ 5-6).

Shortly after this motion was filed, Attorney Barron filed a motion to withdraw as counsel. (Docket No. 182). The motion was allowed, and new counsel was appointed on August 10, 2017. The court allowed supplemental briefing on the Renewed Motion for an Evidentiary Hearing. In a memorandum filed on January 5, 2018, new counsel made it clear that Smith is seeking an evidentiary hearing in the state court, and that "[t]he purpose of the hearing in state court would be to show that there was not just one but two objections voiced

by the defense to the prosecutor's use of a peremptory challenge to prevent a transgendered individual from serving on the jury." (Docket No. 192 at 1-2).

### III.  DISCUSSION

As detailed above, the fact that there was a Batson objection made at sidebar was presented to, and accepted by, the Single Justices of the SJC, yet they declined to reopen the issue whether the trial judge violated Smith's equal protection rights by allowing the Commonwealth to exercise its peremptory challenge.  Smith seeks to have an evidentiary hearing to add the "fact" that there was an objection to the Commonwealth's exercise of its peremptory challenge even before the parties went to side bar.  This potential evidence, even if true, does not expand the record in any significant way.  The fact that an objection was made has already been conceded.  Furthermore, the proffered testimony does nothing to address the SJC's concern that counsel had not "asserted that a pattern of improper exclusion actually had been established," but had only stated that she was putting on the record "[f]or the court's consideration" that she was "beginning to see a pattern on the basis of the Commonwealth with the exclusion of a homosexual, white, male." Smith, 450 Mass. at 406, 879 N.E.2d at 97. Compare Sanchez v. Roden, 753 F.3d 279, 286-87 (1st Cir. 2014) (defense counsel expressly stated at trial that he objected to the Commonwealth's pattern of challenges against young, male, African Americans, and confirmed that he was making a Batson challenge).  Nor does it address the SJC's concern that counsel had not identified whether she was objecting because the potential juror was homosexual or transgendered.  See Smith, 450 Mass. at 405, 879 N.E.2d at 96.  Thus, regardless of whether Smith is legally entitled to an evidentiary hearing in connection with this habeas petition, he has not established any need for the hearing.  See

[13]

Cullen v. Pinholster, 563 U.S. 170, 185-86, 131 S. Ct. 1388, 1400-01, 179 L. Ed. 2d 557 (2011) (discretion of federal habeas courts to take new evidence is limited).

Moreover, Smith has not even addressed any reason why a stay of the instant proceedings would be appropriate to enable him to return to state court. This court has already stayed these proceedings once (and for a considerable period of time) to enable Smith to present his issues concerning the sufficiency of the jury selection record to the state court. Clearly the information contained in his affidavit about what was said during jury selection was known to Smith at the time the issue was being presented to the state courts. A stay of a habeas petition pending consideration of issues by the state court[6] is "available only in limited circumstances." Rhines v. Weber, 544 U.S. 269, 277, 125 S. Ct. 1528, 1535, 161 L. Ed. 2d 440 (2005). Thus, there must be "good cause for the petitioner's failure to exhaust his claims first in state court[,]" the claims cannot be "plainly meritless" and the petitioner cannot be engaged "in abusive litigation tactics or intentional delay." Id. at 277-78, 125 S. Ct. at 1535. In the instant case, there is no "good cause" for Smith not to have presented his affidavit to the state court in connection with his challenge to the transcript, and, as noted above, his assertions of fact do not add anything substantive to the record. While this court is not prepared to rule that Smith has engaged in abusive litigation tactics, the time has come to have the habeas court address the merits of his petition. In short, to the extent that he is asking for a stay, there is no basis for this court to issue one.

---

[6] The respondent argues that a stay is not available to develop a factual record, as opposed to exhausting legal claims. (See "Respondent's Response to Petitioner's Supplemental Memorandum" (Docket No. 193) at 3-4). This court declines to reach this issue, and will assume that a stay could be warranted in order to expand a factual record in appropriate circumstances.

[14]

Finally, Smith relies on Chessman v. Teets, 354 U.S. 156, 77 S. Ct. 1127, 1 L. Ed. 2d 1253 (1957), in support of his request for a hearing as to the sufficiency of the transcript. (See Docket No. 192 at 2). That reliance is misplaced. In Chessman, a death penalty case, the stenographer died before the trial transcript was completed. The transcript was then completed by a new stenographer with close ties to the prosecution team, and with the assistance of prosecution witnesses. The defendant, who was *pro se*, was excluded from this process. See id. at 158-61, 77 S. Ct. at 1128-30. The Supreme Court held that under these circumstances, "the ex parte settlement [creation] of this state court record violated petitioner's constitutional right to procedural due process. We think the petitioner was entitled to be represented throughout those proceedings either in person or by counsel." Id. at 162, 77 S. Ct. at 1130. In the instant case, there is no evidence that the Commonwealth or any of its witnesses were involved in compiling the transcript. To the extent that there have been any modifications to the transcript, they have been made at Smith's request — neither he nor his counsel have been excluded from anything relating to the creation or review of the transcript. Moreover, Chessman involves a direct appeal, and not a habeas proceeding. In short, there is nothing in Chessman that mandates an evidentiary hearing under the facts presented here.

## IV. CONCLUSION

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that Smith's "Renewed Motion for Evidentiary Hearing" (Docket

No. 179), as amended by "Petitioner's Supplemental Memorandum Re Renewed Motion for

Evidentiary Hearing" (Docket No. 192), be DENIED.[7]

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

---

[7] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).