UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SAM SMITH, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 09-10434-NMG |
| DUANE MacEACHERN, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION ON PETITION FOR
## WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254

February 21, 2019

DEIN, U.S.M.J.

### I.  INTRODUCTION

The petitioner, Sam Smith ("Smith" or the "defendant" or the "petitioner"), was

convicted of first degree murder by a Suffolk County, Massachusetts jury on June 12, 2001 for

the shooting death of Steven Gaul.  He was sentenced to life in prison without the possibility of

parole.  Smith filed a motion for a new trial on June 24, 2004, which was denied on February 10,

2006.  His conviction, and the denial of his motion for a new trial, were affirmed by the

Massachusetts Supreme Judicial Court ("SJC") on January 11, 2008.  Commonwealth v. Smith,

450 Mass. 395, 879 N.E.2d 87 (2008) ("Smith I").  On January 24, 2008, Smith sought a

rehearing from the SJC, which was denied on April 4, 2008.  Smith sought a writ of certiorari

from the United States Supreme Court, which was denied on October 6, 2008.  Smith v.

Massachusetts, 555 U.S. 893, 129 S. Ct. 202, 172 L. Ed. 2d 161 (2008).

On March 20, 2009, Smith filed a timely pro se petition for a writ of habeas corpus in this court, which has been amended twice since counsel was appointed. (Docket Nos. 1, 20, 110-1[1]). As explained herein, Smith's remaining habeas claims have traveled through a complicated procedural history in both federal and state court. They are finally ripe for an adjudication on the merits. In his remaining claims, Smith contends that he is entitled to habeas relief because (1) the prosecutor at trial improperly used a peremptory challenge to excuse a possibly transgender juror, and (2) the trial judge gave a constitutionally improper jury instruction.[2] For all the reasons herein, this court recommends to the District Judge to whom this case is assigned that Smith's petition for a writ of habeas corpus be DENIED.

## II.  STATEMENT OF FACTS[3]

### The Underlying Crime

Smith was convicted of first degree murder for the killing of Steven Gaul. Detailed facts relating to his claims of error will be discussed below. The following is a general description of the facts as the jury could have found them, and as described by the SJC in its opinion affirming the denial of Smith's motion for a new trial and affirming his conviction. See Smith I, 450 Mass. at 396-97, 879 N.E.2d 90-91.

---

[1] As indicated in Docket No. 120, Docket No. 110-1 is the operative petition as to the petitioner's two surviving grounds for habeas relief. As explained, infra, the petitioner's other grounds have been either withdrawn or previously dismissed by this court.

[2] Smith also contends that he is entitled to a further evidentiary hearing either in this court or the state court on the juror selection issue. This was addressed fully in this court's Report and Recommendation of February  21, 2018 recommending that the request for a further evidentiary hearing be denied. (Docket No. 195). The R&R was adopted by the District Judge on March 14, 2018. (Docket No. 200).

[3] The record below is included in the multi-volume Supplemental Answer ("SA") filed by the respondent (Docket Nos. 14, 102) and will be cited by [volume]:[page].

On August 16, 1991, Steven Gaul (the "victim") was standing with several friends in Ramsey Park, near Lenox Street in the Roxbury neighborhood of Boston.  Id.  The victim lived in Columbia Point, in the Dorchester neighborhood of Boston, and was a member of a gang of young men from Columbia Point known as the "Columbia Point Dawgs."  Id.  The defendant and two other men, K.J. Walker and David Walker, entered the park wearing black hooded sweat-shirts.  Id.  The defendant and his two companions were associated with the Lenox Street gang. Id.  The three men approached the victim, and K.J. Walker shot him once in the stomach and then ran out of the park.  Id.  The victim fell to the ground and the defendant then stood above him and proceeded to fire several shots directly at him.  Id.  The defendant's gun jammed and there was a pause in the shooting as he removed the bullets wedged in the gun's chamber.  Id. As he did so, the victim reached up and raised his hands.  Id.  The defendant said, "I told you I'm gonna get you, bitch," and after reloading the gun, fired several more shots at the victim, who fell back to the ground.  Id.

Patrick Culbreath, a friend of the victim, was watching from across the park.  Id.  He fired several shots at the defendant and the defendant returned fire.  Id.  The defendant then walked toward the park's entrance where he was joined by Steven Kindell, who was wearing a white shirt and riding a bicycle.  Id.  The two left the park together.  Id.  Kerryn Fernandes and her father, Julio Fernandes, observed the shooting as they drove by the park, although they could not identify the faces of the participants.  Id.  They were on their way to an apartment located one block from the park.  Id.  They parked their vehicle near the park and as they walked to the apartment, Kerryn saw the defendant and Kindell walking toward them.  Id.  Kindell, whom Kerryn had previously dated and knew from the neighborhood, said "hi" to Kerryn.  Id.  Kerryn

also knew the defendant, and knew that both he and Kindell lived nearby.  Id.  She recognized

the clothes the two men were wearing as identical to the clothes of the shooter and his friend

on the bicycle, both of whom she had seen moments earlier in the park.  Id.  She turned to her

father and said, "Dad, there they are."  Id.

**Voir Dire**

Smith's first claim for relief relates to the jury selection or "voir dire" portion of Smith's

trial.  Specifically, Smith challenges the way in which one potential juror was excused.  The SJC

described the relevant facts as follows:

> The empanelment process included individual questioning by the judge of all
> the jurors.  After the juror in question responded to the judge that he was a
> hairdresser's assistant and worked in a beauty salon, the prosecutor
> attempted to challenge the juror for cause because, the prosecutor said, the
> juror had some "identification issues," seemed to be a man dressed as a
> woman, and appeared to have breasts.[4]  The defense counsel responded, "I
> see a man who maybe at best I would argue might be a homosexual.  And if
> the Commonwealth's intention is to challenge on the homosexuals ...."  The
> judge immediately denied the challenge for cause, and the prosecutor
> promptly exercised a peremptory challenge.  The following exchange then
> occurred:

>> DEFENSE COUNSEL: "Your Honor, I'd like to put on the record that I'm
>> beginning to see a pattern on the basis of the Commonwealth with the
>> exclusion of a homosexual, white male.  So I want to put that on the
>> record as well."

>> THE JUDGE: "Okay.  You've put it on the record."

>> DEFENSE COUNSEL: "For the Court's consideration.  Thank you."

---

[4]  The actual quote from the prosecutor was "I think this person has some identification issues.  It looks
like -- I'm trying to be polite here -- he's a man dressed as a woman.  My take on it, it looks like she -- am
I wrong on this or do you see the same thing?"  (SA II:185).

> THE PROSECUTOR: "Just so I may be crystal clear, there's absolutely no pattern.  I don't even know of any even homosexuals that have been before us."
>
> "This particular gentleman was dressed, in my opinion, like a female and he has breasts and so forth.  And, frankly, I was just looking at this from a common sense point of view."
>
> "This guy has a lot of identification issues, and I don't –"
>
> THE JUDGE: "Well, first of all you have a right to present a challenge. You can challenge a person for any reason, as long as its not illegal.  It's very simply put."
>
> Defense counsel stated nothing further about the juror, and the empanelment procedure moved to the next juror.

Smith I at 404-05, 879 N.E.2d at 95-96 (footnote added).

As detailed more fully below, the SJC initially rejected Smith's challenge to the prosecutor's use of a peremptory challenge on the grounds that "defense counsel neither objected to the prosecutor's challenge nor asserted that a pattern of improper exclusion actually had been established."  Id. at 406, 879 N.E.2d at 97.  In addition, the SJC concluded that there was a "factual ambiguity surrounding the juror's sex, transgendered status, and sexual orientation, as well as the motive or reason for the prosecutor's challenge" which, when "combined with the absence of an objection from defense counsel when the challenge was made, impeded the trial judge's ability to draw an inference that purposeful discrimination had occurred."  Id. at 407, 879 N.E.2d at 97.  Further development of the record after Smith's direct appeal established that counsel had, in fact, objected to the striking of the juror.  Nevertheless, Smith's subsequent appeals of this issue with the state court, and requests for evidentiary hearings, were unsuccessful.

**Jury Instructions**

Smith's second claim for relief relates to the jury charge portion of Smith's trial. Specifically, Smith challenges the comments made by the trial judge during his instructions to the jury in which the trial judge purported to summarize some facts at trial about gang involvement. As detailed more fully below, Smith contends that the judge introduced inculpatory evidence linking him to other murders without giving him an opportunity to correct the record. The SJC admitted that "[t]he challenged instruction is clearly not a model to be followed[,]" and concluded that the trial judge did not link the defendant to the other crimes. Nevertheless, it held that even if the ambiguous charge was interpreted to have misstated the evidence, there still was no constitutional error because "the jury's verdict was not 'substantially swayed' by the judge's one misstatement, and . . . the error was not prejudicial." Id. at 403, 879 N.E.2d at 94 (citation omitted).

**Procedural History**

Smith was indicted by a Suffolk County grand jury on September 17, 1999. (SA I:6). A jury trial was held before Superior Court Justice James D. McDaniel, Jr. in June of 2001. (SA II:114 - SA III:336). Smith was convicted by a Suffolk County jury on June 12, 2001 of murder in the first degree and was sentenced to life imprisonment. (SA I:10). Smith filed a motion for a new trial on June 24, 2004, which was denied on February 10, 2006. (Id. at 328, 519-32). Smith's conviction, and the denial of his motion for a new trial, were affirmed by the SJC on January 11, 2008. See Smith I.

Smith moved for a new hearing before the SJC, which was denied on April 4, 2008. (SA I:656-69). Smith then sought a writ of certiorari from the United States Supreme Court, which

6

was denied on October 6, 2008.  Smith, 555 U.S. at 893, 129 S. Ct. at 202.  Smith filed his initial

habeas petition, pro se, on March 20, 2009.  (Docket No. 1).  He initially moved for relief on

three grounds: (1) that the prosecutor's exercise of a peremptory challenge to exclude a

transgendered or homosexual individual violated the Equal Protection Clause of the Fourteenth

Amendment; (2) that the trial judge violated Smith's federal Due Process rights when he

introduced new inculpatory evidence during his jury instructions; and (3) that the trial judge

violated Smith's federal Due Process rights when he allowed into evidence a photograph of

Smith with two individuals who were identified at trial as members of the Lenox Street gang.

(Id.).

The respondent moved to dismiss the petition because the third ground was unex-

hausted.  (Docket No. 15).  On October 5, 2009, Smith moved to amend the petition to include

only the first two grounds for relief.  (Docket No. 19).  On October 26, 2009, this court granted

Smith's motion to amend the petition, which he did on October 27, 2009.  (Docket No. 20).

Smith thereafter filed a motion to stay his petition (Docket No. 26) and Duane MacEachern (the

"respondent") filed a motion to strike (Docket No. 28), both of which this court denied on

August 6, 2010.  (Electronic Order of 08/06/2010).  Smith's counsel subsequently withdrew, and

new counsel was appointed on October 20, 2010.  (Docket No. 34).

On March 2, 2011, Smith filed another motion to stay in order to exhaust his remedies

in state court related to the equal protection claim.  (Docket No. 41).  Smith's counsel argued

that a stay was warranted because there was an error in the jury selection portion of the

transcript, which, when corrected, would establish that trial counsel had, in fact, objected to

the prosecutor's use of a peremptory challenge as violative of Batson v. Kentucky, 476 U.S. 79,

106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).[5]  (Docket No. 42).  This transcript error was relevant

because the SJC, in confirming Smith's conviction, had concluded that no specific <u>Batson</u>

objection had been made.  <u>See</u> <u>Smith I</u> at 406-07, 879 N.E.2d at 96-97.  After a hearing, this

court allowed the stay.  (Docket No. 50).

 With the stay of his habeas petition in place, Smith moved the litigation back to state

court, where he moved before the Superior Court for collateral relief after a non-evidentiary

hearing.  (SA IV:86-125).  In ruling on that motion, Superior Court Judge Carol Ball found that "it

is now conceded that trial defense counsel did, after all, make an explicit 'Batson' objection in

what seems to this judge to have been a timely manner."  (<u>Id.</u> at 126-27).  Notwithstanding that

new information, Judge Ball denied Smith's motion because "[s]everal observations made by

the SJC remain true: it is still undecided if a jury challenge based on a potential juror's homo-

sexuality or transgendered status is a violation of Article 12 or the Equal Protection clause;

there remains a presumption that a jury challenge is proper; the record remains unclear

whether the challenged juror was male, female, homosexual or transgendered; and it is impos-

sible to determine the prosecutor's motive for the challenge."  (<u>Id.</u> at 127).  Judge Ball also

concluded that "[t]he fact of the matter is that my ruling on this motion will not be dispositive

and will (and should) have absolutely no precedential value."  (<u>Id.</u>).

---

[5]  In <u>Batson v. Kentucky</u>, the Supreme Court "outlined a three-part burden-shifting framework [for] a
'<u>Batson</u> challenge,' through which a defendant can dispute the government's use of peremptory strikes
as racially motivated and demonstrate an equal protection violation."  <u>United States v. Casey</u>, 825 F.3d
1, 10 (1st Cir. 2016), <u>cert</u> <u>denied</u>, 137 S. Ct. 839, 197 L. Ed. 2d 77 (2017).  In <u>J.E.B. v. Alabama ex rel. T.B.</u>,
511 U.S. 127, 144-46, 114 S. Ct. 1419, 1429-30, 128 L. Ed. 2d 89 (1994), the Supreme Court extended this
holding to prohibit peremptory challenges based solely on gender.

Smith sought further appellate review from the SJC under the gatekeeper provision of Mass. Gen. Laws ch. 278, § 33E.  His petition was denied by a Single Justice of the SJC on March 29, 2013.  (Id. at 168-69).  In the denial, Justice Spina held that "the discovery of the transcription error does not alter [the SJC's] previous disposition" and that the motion "is denied because it presents no 'new and substantial question which ought to be determined by the full court.'"  (Id. (quoting Commonwealth v. Ambers, 397 Mass. 705, 707, 493 N.E.2d 837, 839 (1986), and Mass. Gen. Laws ch. 278, § 33E)).

Following Justice Spina's gatekeeper decision, Smith filed other motions for relief with the trial court including, inter alia, a request for a Batson hearing and a third motion for a new trial.  (See SA IV:347-406, 460).  The Superior Court denied these requests on July 18, 2013, and then, again, on May 22, 2014.  (Id. at 465-67).  Smith again sought leave to obtain further appellate review from a Single Justice of the SJC under the gatekeeper provision.  On December 4, 2014, Justice Duffly denied his request "[b]ecause the sole issue raised in the defendant's third motion for a new trial is neither new nor substantial within the meaning of G. L. c. 278, § 33E . . . ."  (Id. at 468-73).

Having exhausted the equal protection claim in state court, Smith returned to this court. This court lifted the stay on his habeas petition on August 5, 2013.  (Docket No. 70).  Following a hearing on August 19, 2013, this court reinstated the stay.  (Docket No. 76).  After several status reports were filed by Smith, this court lifted the stay again on December 9, 2014.  (Docket No. 95).

Smith filed a second motion to amend his habeas petition on April 29, 2015.  (Docket No. 110).  Therein, he sought to amend his petition so as to make stylistic changes to his first

two causes for relief, and to add a third claim under Brady v. Maryland, 373 U.S. 83, 83 S. Ct.

1194, 10 L. Ed. 2d 215 (1963).  After a hearing on the motion, this court issued a Report and

Recommendation determining that the motion to amend should be granted with regard to

Smith's first two grounds for relief, but denied as to the request to add a third claim.  (Docket

No. 119).  The District Judge adopted this court's Report and Recommendation on November

20, 2015.  (Docket No. 126).

In accordance with the court's ruling, Smith's Second Amended Petition was accepted as

filed (see Docket No. 110-1) and Smith submitted a supplemental memorandum of law in

support of his petition as well as a motion for evidentiary hearing on January 5, 2016.  (Docket

Nos. 128).  On February 17, 2016, Smith filed a motion to stay, alleging that his counsel had a

conflict of interest due to his representation of another individual in a different case.  (Docket

No. 135).  This court held a hearing on February 25, 2016, at which it was agreed that his then

attorney, Kevin Barron, would continue to represent Smith and would file a new motion to stay

based on allegedly newly discovered evidence.  (See Docket No. 140).  The pending motion to

stay of February 17, 2016 was denied as moot.  (Docket No. 164).

The new motion to stay, filed on April 8, 2016, included a request to exhaust remedies

in state court on the Brady claim and to amend the petition to include that claim.  (Docket No.

143).  On February 17, 2017, this court issued a Report and Recommendation on the motion to

stay, concluding that the requested relief should be denied.  (Docket No. 167).  The Report and

Recommendation was adopted by the District Judge on March 28, 2017.  (Docket No. 173).

Thereafter, and upon order of the court, the parties submitted a status report wherein they set

a schedule for submitting supplemental authority and reported that "[u]pon receipt of the

petitioner's notice of supplemental authority and any response from the respondent, the parties ask the Court to deem the matter submitted for a decision on the claims in the operative petition.  See Docs. No. 25, 29, 128, 133."  (Docket No. 175).

Despite the representations in the status report, on May 15, 2017, Smith filed a renewed motion for an evidentiary hearing.  (Docket No. 179).  He argued that "[a]n evidentiary hearing would show that the now missing audio tape of June 5, 2001 jury selection proceedings would further support Petitioner's equal protection claim under JEB v. Alabama . . . and that the Petitioner's Batson claim was properly raised and preserved but not adjudicated on the merits in the SJC."  (Id.).  After supplemental briefing on the issue and the appearance of new counsel for Smith (see Docket Nos. 181-85, 192-94), on February 21, 2018, this court issued a Report and Recommendation on the renewed motion, concluding that the request for a hearing should be denied.  (Docket No. 195).  The Report and Recommendation was adopted by the District Judge on March 14, 2018.  (Docket No. 200).

On March 30, 2018, new counsel filed Proposed Findings and Rulings supplementing the briefing on ground one – the disqualification of the juror.  (Docket No. 202).[6]  Thus, all briefing has finally been completed.

The court now turns to the merits of the petitioner's two surviving claims for relief: (1) that the prosecutor improperly exercised a peremptory challenge to excuse a possibly transgendered juror, in violation of the Equal Protection Clause; and (2) that the trial judge offered improper comments or instructions to the jury asserting that the petitioner had

---

[6]  Meanwhile, Smith's pro se "motion to clear up all misunderstanding and confusion re motion for hearing" (Docket No. 197) was denied by the District Judge.  (Docket No. 201).

participated in a prior gang shooting, in violation of the petitioner's Due Process rights.

Additional facts will be added as necessary.

### III. ANALYSIS

#### A. Standard of Review -- Habeas Petition

The standard of review to be applied to Smith's habeas corpus petition is set forth in 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). That standard provides that a writ of habeas corpus should not be granted on any claim that was adjudicated by the state court on the merits unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly establ- ished Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." "AEDPA's strict standard of review only applies to a claim that was adjudicated on the merits in state court proceedings." Norton v. Spencer, 351 F.3d 1, 5 (1st Cir. 2003), cert. denied, 542 U.S. 933, 124 S. Ct. 2876, 159 L. Ed. 2d 798 (2004) (internal citations and quotations omitted). "If a claim was not adjudicated on the merits in a state court proceeding, then the issue is reviewed de novo." Id. In addition to meeting one of AEDPA's prongs, "[t]he petitioner must also show that the state court's error had a 'substantial and injurious effect' on the jury's verdict." Lucien v. Spencer, 871 F.3d 117, 122 (1st Cir. 2017) (citation omitted).

A writ of habeas corpus is only appropriate "under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it

decides a case differently than [the Supreme Court has] done on a set of materially indistin-

guishable facts." Bell v. Cone, 535 U.S. 685, 694, 122 S. Ct. 1843, 1850, 152 L. Ed. 2d 914

(2002); see also Linton v. Saba, 812 F.3d 112, 122 (1st Cir. 2016).  When reviewing a merits

decision based on the allegation that a ruling was contrary to established federal law, "a habeas

court must determine what arguments or theories supported . . . the state court's decision; and

then it must ask whether it is possible fairminded jurists could disagree that those arguments or

theories are inconsistent with the holding in a prior decision of [the Supreme] Court."  Wetzel v.

Lambert, 565 U.S. 520, 524, 132 S. Ct. 1195, 1198, 182 L. Ed. 2d 35 (2012) (quoting Harrington v.

Richter, 562 U.S. 86, 102, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011)).  Moreover, "[i]n this

context, 'clearly established law' signifies 'the holdings, as opposed to the dicta, of [the

Supreme] Court's decisions.'"  Howes v. Fields, 565 U.S. 499, 505, 132 S. Ct. 1181, 1187, 182 L.

Ed. 2d 17 (2012) (quoting Williams v. Taylor, 529 U.S. 362, 412, 120 S. Ct. 1495, 1523, 146 L. Ed.

2d 389 (2000)).  In addition, "clearly established federal law" refers to law existing at the time

of the state-court decision.  See White v. Woodall, 572 U.S. 415, 426, 134 S. Ct. 1697, 1706, 188

L. Ed. 2d 698 (2014).

A habeas court is bound by existing Supreme Court law and cannot extend such law in

granting relief.  "[I]f a habeas court must extend a rationale before it can apply to the facts at

hand, then by definition the rationale was not clearly established at the time of the state-court

decision.  AEDPA's carefully constructed framework would be undermined if habeas courts

introduced rules not clearly established under the guise of extensions to existing law."  Id.

(internal citations and quotations omitted).

"[A] state court adjudication constitutes an unreasonable application of clearly established federal law if the state court identifies the correct governing legal principle from the Supreme Court's then-current decisions but unreasonably applies that principle to the facts of the prisoner's case." Tran v. Roden, 847 F.3d 44, 48 (1st Cir. 2017) (internal quotation marks, punctuation and citation omitted). An unreasonable application must entail more than "some increment of incorrectness beyond error[.]" McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002) (en banc) (citation omitted); accord Bell v. Cone, 535 U.S. at 694, 122 S. Ct. at 1850. The "increment of incorrectness beyond error" "must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court." Brown v. Ruane, 630 F.3d 62, 67 (1st Cir. 2011) (quoting McCambridge, 303 F.3d at 36). Moreover, under this analysis, "a state court is afforded deference and latitude." Hensley v. Roden, 755 F.3d 724, 731 (1st Cir. 2014), cert denied, 135 S. Ct. 964, 190 L. Ed. 2d 852 (citation omitted).

Finally, as mandated by 28 U.S.C. § 2254(e)(1), the "state court's factual findings are presumed to be correct unless the petitioner rebuts the presumption with clear and convincing evidence." Companonio v. O'Brien, 672 F.3d 101, 109 (1st Cir. 2012), cert denied, 568 U.S. 857, 133 S. Ct. 197, 184 L. Ed. 2d 101. This "presumption of correctness applies to factual determinations made by both state trial and appellate courts." Id. (citing Clements v. Clarke, 592 F.3d 45, 47 (1st Cir. 2010)).

**B.    Peremptory Challenge Claim**

**Independent State Ground**

As an initial matter, the respondent argues that this court is precluded from reviewing Smith's peremptory challenge claim at all because it was denied based on an independent and

14

adequate state law ground.  Specifically, the respondent argues that the two Single Justice

opinions denying Smith further appellate review at the SJC, and the Single Justices' reasoning

that the petitioner failed to present a "new" issue within the meaning of Mass. Gen. Laws ch.

278, § 33E, constitute an independent and adequate state law basis for denial of his entire

peremptory challenge claim.  (Docket No. 133 at 18).  This court does not agree.

"[A] federal court may not review federal claims that were procedurally defaulted in

state court – that is, claims that the state court denied based on an adequate and independent

state procedural rule."  Davila v. Davis, 137 S. Ct. 2058, 2064, 198 L. Ed. 2d 603 (2017); see also

Lee v. Corsini, 777 F.3d 46, 54 (1st Cir. 2015) ("Federal habeas review of the merits of a claim is

precluded if there is an independent and adequate state law ground supporting the state

court's decision.").  "The single justice's determination that an issue is not 'new' within the

meaning of [Mass. Gen. Laws ch. 278, § 33E] is tantamount to a finding of procedural default,

'the classic example of an independent and adequate state ground.'"  Lee v. Corsini, 777 F.3d at

55 (quoting Simpson v. Matesanz, 175 F.3d 200, 207 (1st Cir. 1999), cert denied, 528 U.S. 1082,

120 S. Ct. 803, 145 L. Ed. 2d 677).  In the instant case, however, the record establishes that

Smith's objection to the juror disqualification was decided on the merits, and not on procedural

grounds.

In Lee v. Corsini, the First Circuit explained the process of review under Mass. Gen. Laws

ch. 278, § 33E:

> According to the scheme set forth in [the] statute, a defendant who has been
> convicted of first-degree murder is afforded plenary review on direct appeal
> to the SJC.  Following such review, a defendant is free to file any number of
> motions for a new trial in state superior court.  He is only entitled to appel-
> late review of the denial of such a motion, however, if a single justice of the
> SJC determines that the appeal presents a question that is both "new" and

> "substantial," fit for resolution by the full court, or if it nevertheless raises the specter of "a substantial risk of a miscarriage of justice[.]"
>
> . . .
>
> "[An] issue is not 'new' within the meaning of § 33E where either it has already been addressed, or where it *could* have been addressed had the defendant properly raised it at trial or on direct review.  The statute requires that the defendant present all his claims of error at the earliest possible time, and failure to do so precludes relief on all grounds generally known and available at the time of trial or appeal."
>
> An issue is "substantial" if it is "meritorious in the sense of being worthy of consideration by an appellate court."  A decision by the single justice that a § 33E appeal neither presents a new and substantial question nor raises a substantial risk of a miscarriage of justice, is "final and unreviewable."

Id. at 55 (internal punctuation and citations omitted).

The First Circuit made clear in Lee that where the Single Justice denies further review because the petitioner's claim is not "new," the claim is procedurally defaulted and thus not reviewable by a habeas court.  Id. at 56.  However, when a claim is "new" but not "substantial", the claim is deemed adjudicated on the merits, is not defaulted, and can be reviewed by the habeas court.  See id.  The First Circuit explained that "[t]his, at least on its face, is straight-forward enough – a finding that the issue is not new amounts to procedural default, whereas a finding that the issue is new but not substantial does not."  Id.  "[I]t is only the failure to satisfy the 'new' prong of the § 33E rule that signals procedural default."  Id. at 57.

The respondent points out that "each time the petitioner sought leave to appeal the Superior Court's denial of his motions for relief, gatekeeper justices of the SJC concluded that he had failed to raise 'new' issues within the meaning of Section 33E."  (Docket No. 133 at 19).  The respondent would have this court stop there and deny review of the entire peremptory challenge claim based on the two Single Justice opinions.  However, a closer look at the Single

Justice opinions compels the conclusion that such a formulaic approach is contrary to the First

Circuit's reasoning in Lee.

In the first Single Justice opinion, Justice Spina held that:

> Notwithstanding the revelation regarding the transcription error, the defendant's gender discrimination claim is nevertheless not "new."  Relying on J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127 (1994), the primary support the defendant cites now, the defendant asserted a gender discrimination claim in his direct appeal.  Because the argument received full consideration at that time, we need not revisit it.  Moreover, and contrary to the defendant's contention, this court did not reject the defendant's gender discrimination claim based solely on waiver grounds.  Instead, what appeared to be an absence of an express objection was merely one factor in the court's analysis.  Thus, the discovery of the transcription error does not alter our previous disposition.

(SA IV:168-69 (internal citations omitted)).

In the second Single Justice opinion, Justice Duffly held that:

> Here, the sole issue raised in the defendant's motion is not "new."  Indeed, it was addressed, in detail, in the full court's decision on the defendant's direct appeal, as well as being the key issue in his second and third motions for a new trial, and in the single justice's decision denying his first gate-keeper petition.
>
> The issue is also not "substantial."  While the defendant insists that the trial judge had no discretion to deny his request for a Batson hearing, that is not the case.  As the full court noted in its decision, the challenged juror did not identify as homosexual or transgender (the defendant's asserted reason for the necessity of a Batson hearing in his second and third motions for a new trial), and the prosecutor's stated reasons for his peremptory challenge are varied and unclear.  Moreover, the record of the voir dire proceedings shows that the defendant did not seek a hearing on the ground that there had been a pattern of exclusion of all members of the venire who were homosexual.
>
> . . .
>
> In its decision affirming the defendant's conviction, the full court addressed, in depth, both the defendant's due process and equal protection claims concerning this peremptory challenge.  Among other things, the court noted the "factual ambiguity surrounding the juror's sex, transgendered status,

17

> and sexual orientation, as well as the motive or reason for the prosecutor's challenge," which impeded the judge's ability to draw an inference that "purposeful discrimination" occurred.  Indeed, nothing in the record establishes whether the juror was male, a homosexual, or a transgendered individual.

(SA IV:470-73 (internal citations and footnote omitted)).

It is clear from both Single Justice decisions that Smith's peremptory challenge issue, as raised in his petitions for further appellate review, did not warrant renewed review by the full SJC because it had already been decided by the SJC based on a multitude of reasons, beyond mere lack of objection.  Since the issue had been decided on the merits by the SJC in connection with Smith's direct appeal, it is this court's duty to review the state court's substantive decision under the appropriate habeas standard.  See Cone v. Bell, 556 U.S. 449, 467, 129 S. Ct. 1769, 1781, 173 L. Ed. 2d 701 (2009) ("When a state court refuses to readjudicate a claim on the ground that it has been previously determined, the court's decision does not indicate that the claim has been procedurally defaulted.  To the contrary, it provides strong evidence that the claim has already been given full consideration by the state courts and thus is ripe for federal adjudication." (emphasis in original)).  The court will do so here.

Finally, respondent contends that if the court rejects the argument that habeas review is fully barred, "it should look through [the Single Justice] decisions to conduct habeas review on the last reasoned state-court decision, which was the Superior Court's."  (Docket No. 133 at 26 n.16).  This argument is not persuasive.  The last substantive decision was not the Superior Court's, but the SJC's decision on direct review, as modified by the Single Justices' acceptance that a Batson objection had, in fact, been made.  In the last Superior Court decision, which

respondent argues this court should evaluate, Judge Ball described the case and her decision as

follows:

> While the matter was pending before USMJ Judith Dein, counsel discovered an error in the trial transcript.  Specifically, it is now conceded that trial defense counsel did, after all, make an explicit "Batson" objection in what seems to this judge to have been a timely manner.  Judge Dein stayed the federal proceedings so that the state courts could consider this new development.  The parties submitted briefs and argued before me on December 19, 2011.  After review of the submissions and the case law, the defendant's motion is DENIED.
>
> First, I decline to address the defendant's so-called "judicial comment" claim which was, it seems to me, before the SJC the first time around.  As regards the peremptory challenge issue, the SJC addressed that issue as well.  Several observations made by the SJC remain true: it is still undecided if a jury challenge based on a potential juror's homosexuality or transgendered status is a violation of Article 12 or the Equal Protection clause; there remains a presumption that jury challenge is proper; the record remains unclear whether the challenged juror was male, female, homosexual or transgendered; and it is impossible to determine the prosecutor's motive for the challenge.
>
> The fact of the matter is that my ruling on this motion will not be dispositive and will (and should) have absolutely no precedential value.  Indeed, I am in no better position to address the defendant's claims than is the SJC or Judge Dein, for that matter.[FN1]  Under these circumstances, I have decided to deny the motion based on my understanding of the present state of the case and the law and send it along its predetermined path.
>
> > [FN1] The truth of the matter is that, due to the decimation of the law clerk program in the Superior Court, I am in a drastically worse position than is either the still relatively wealthy SJC or federal courts.

(SA IV:233-35 (internal citations and emphasis omitted)).  After this decision, Justices Spina and

Duffly issued the Single Justice decisions affirming the SJC's decision on direct appeal despite

the express <u>Batson</u> challenge.  These decisions, therefore, are controlling.

**Specific Standard of Review**

The petitioner argues that this court should review the peremptory challenge claim *de novo*. (Docket No. 45 at 33 ("In Mr. Smith's case, this Court should review the SJC's decision *de novo* because it decided the equal protection claim on procedural grounds and not on the merits.")). Where the state court does not decide the claim on the merits, the habeas court reviews the arguments *de novo* and without the deferential AEDPA standard. Norton v. Spencer, 351 F.3d at 5. In the instant case, however, while the SJC declined to reach the issue whether gender identity or sexual orientation can properly form the basis for a peremptory challenge, it did apply a standard comparable to Supreme Court law and ruled that Smith had failed to make a prima facie showing of an impermissible peremptory challenge, applying the Batson standard, as further defined by the Supreme Court in Johnson v. California, 545 U.S. 162, 125 S. Ct. 2410, 162 L. Ed. 2d 129 (2005). Under Johnson, a defendant must "produc[e] evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred." Id. at 170, 125 S. Ct. at 2417. As the Johnson Court held further:

> [A] defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. To establish such a case, the defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.

Id. (quoting Batson v. Kentucky, 476 U.S. at 96, 106 S. Ct. 1712) (additional and internal citations and quotations omitted).[7]

The SJC discussed Smith's peremptory challenge claim in the context of Commonwealth v. Soares, 377 Mass. 461, 387 N.E.2d 499 (1979), the then Massachusetts equivalent of Batson.[8] See note 5, supra.  As the SJC held:

> To date, this court has not considered the question whether the exercise of a peremptory challenge to remove a juror because of his or her sexual orientation or because the juror was transgendered would violate the guarantees of art. 12 or the equal protection clause.  Nor, it appears, has any other court.  We do not reach the question in this case because the record does not supply the necessary factual foundation.
>
> The exchange between counsel and the judge during the voir dire of the juror reflects confusion in several respects.  Defense counsel appeared to object to the prosecutor's supposed use of a peremptory challenge to remove the juror on the basis of homosexuality, while the prosecutor seemed clearly to focus on what he perceived to be the transgendered appearance of the juror.  None of the judge's comments offer additional insights about the juror, and thus we have no information about the juror's sex or transgendered status beyond the superficial observation that the juror appeared, at least to one person, to be a man with breasts, dressed as a woman.  The juror did not identify himself as homosexual, and there was no evidence offered from any other sources on this issue.  Further adding to the ambiguity, defense counsel did not make an explicit objection to the challenge, and instead only "put on the record" that she was "beginning to see a pattern" of removing white male homosexuals.

---

[7] Although Batson and Johnson specifically discuss peremptory challenges on the basis of race, this same framework applies to challenges based on gender or other protected groups.  See J.E.B. v. Alabama, 511 U.S. at 144-45, 114 S. Ct. at 1429 ("As with race-based Batson claims, a party alleging gender discrimination must make a prima facie showing of intentional discrimination before the party exercising the challenge is required to explain the basis for the strike.").

[8] Commonwealth v. Soares was recently abrogated by the SJC in Commonwealth v. Robertson, 480 Mass. 383, 395, 105 N.E.3d 253, 264 (2018), wherein the SJC held that "where a juror's membership in a protected class is reasonably in dispute, trial judges, in performing the first step of the Batson-Soares analysis, ought to presume that the juror is a member of the protected class at issue."  This later in time state court development does not control the federal question at issue here.

When analyzing a challenge for a *Soares* violation we begin with the presumption that a peremptory challenge is proper. *Commonwealth v. Soares*, 377 Mass. at 489, 387 N.E.2d 499. The defendant may rebut the presumption by showing that "(1) a pattern of conduct has developed whereby several prospective jurors who have been challenged peremptorily are members of a distinct group, and (2) there is a likelihood they are being excluded from the jury solely by reason of their group membership." *Id.* at 490, 387 N.E.2d 499. Although in some cases a prima facie case of impropriety may be established by the challenge of a single prospective juror, see *Commonwealth v. Fryar*, 414 Mass. 732, 738, 610 N.E.2d 903 (1993), *S.C.*, 425 Mass. 237, 680 N.E.2d 901, cert denied, 522 U.S. 1033, 118 S. Ct. 636, 139 L. Ed. 2d 615 (1997), defense counsel neither objected to the prosecutor's challenge nor asserted that a pattern of improper exclusion actually had been established. Accordingly, counsel did not trigger an obligation on the judge's part to make a finding whether the presumption of propriety was rebutted. A judge may, of course, raise the issue of a *Soares* violation sua sponte. *Commonwealth v. Maldonado*, 439 Mass. 460, 463, 788 N.E.2d 968 (2003). However, given the factual uncertainty in this case about what, if any, discrete "grouping" the juror might fit into, it was not error for the judge to fail to do so. See *Commonwealth v. LeClair*, 429 Mass. 313, 321, 708 N.E.2d 107 (1999) ("A trial judge is in the best position to decide if a peremptory challenge appears improper and requires an explanation by the party exercising it").

While in *Soares,* the defendant relied solely on art. 12, and this court's opinion did as well, see *Commonwealth v. Soares*, 377 Mass. at 477-488, 387 N.E.2d 499, the decisions of the United States Supreme Court on peremptory challenges have focused on the equal protection clause of the Fourteenth Amendment to the United States Constitution; these decisions have concluded that the clause protects the rights of both litigants and jurors to "jury selection procedures that are free from state-sponsored group stereotypes rooted in, and reflective of, historical prejudice." *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 128, 114 S. Ct. 1419, 128 L. Ed. 2d 89 (1994). See *Powers v. Ohio*, 499 U.S. 400, 410-415, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991) (criminal defendant has standing to raise equal protection rights of juror excluded from jury by prosecutor's race-based exercise of peremptory challenge). The defendant's equal protection argument suffers from the same weakness as his art. 12 claim. The factual ambiguity surrounding the juror's sex, transgendered status, and sexual orientation, as well as the motive or reason for the prosecutor's challenge, combined with the absence of an objection from defense counsel when the challenge was made, impeded the trial judge's ability to draw an inference that purposeful discrimination had occurred. See *Johnson v. California*, 545 U.S. 162, 170, 173, 125 S. Ct. 2410, 162 L. Ed. 2d 129 (2005).

Smith I at 405-07, 879 N.E.2d at 96-97.

Smith argues that the SJC erred in concluding that the evidence was insufficient for the trial judge to draw an inference that purposeful discrimination had occurred.  Smith argues that "the [SJC] disregarded the obvious indication by the prosecutor that the real reason for his challenge of the juror at issue was the juror's transgendered status."  (Docket No. 25 at 23-24). Smith claims that it "is objectively unreasonable to hold that a court should follow a three-phase inquiry to infer discriminatory purpose when a party has made an express statement that his purpose was discriminatory."  (Docket No. 45 at 46).  He further asserts that "the prosecution admitted its discriminatory purpose on the record in the most concrete possible terms. The prosecutor stated on the record that he was striking the juror out of gender bias, that the transsexual had 'identification issues' (apparently, the 'issue' of identification with the opposite of one's biological gender)."  (Id. at 48).  Thus, Smith concludes, "[t]he SJC's factual finding that the prosecutor's intent was unclear is an unreasonable determination of the facts."  (Docket No. 202 at ¶ 13).

Admittedly, the SJC contended that the record was ambiguous because it was unable to determine whether the prosecutor was reacting to the defendant's apparent homosexuality or transgender status, a distinction without a difference according to Smith.  See Smith I at 405, 879 N.E.2d at 96 ("Defense counsel appeared to object to the prosecutor's supposed use of a peremptory challenge to remove the juror on the basis of homosexuality, while the prosecutor seemed clearly to focus on what he perceived to be the transgendered appearance of the juror.")).  Thus, Smith contends, any peremptory challenge on the basis of sexual orientation or gender identity is a challenge based on gender and violates the Equal Protection Clause.  (See

Docket Nos. 45, 128, 202).  This court does not need to decide whether the ambiguity identified by the SJC is valid and supports the conclusion reached by the SJC that the trial judge was unable to draw an inference that purposeful discrimination had occurred.  As detailed below, in the absence of any clearly established Supreme Court precedent on point, the SJC decision cannot be disturbed on habeas review.

### Supreme Court Law

Where a claim is adjudicated on the merits, and challenged in a habeas petition, this court's mandate is to review that decision under the AEDPA standard.  As the SJC decided Smith's peremptory challenge claim on the merits, this court can reverse that decision only if the SJC "applie[d] a rule different from the governing law set forth in [Supreme Court] cases, or if it decide[d] a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts."  Bell v. Cone, 535 U.S. at 694, 122 S. Ct. at 1850.  At the time of the SJC's decision in 2008, no Supreme Court case law established that peremptory challenges based on either sexual orientation or transgender status were unconstitutional.  Sneed v. Fla. Dep't of Corr., 496 Fed. Appx. 20, 28 (11th Cir. 2012) (unpublished) ("the Supreme Court has never held that homosexuality is a protected class for purposes of analyzing discrimination in jury selection under Baston."); Williams v. Harrington, No. 09-08774, 2011 WL 4055773, at *7 (C.D. Cal. Aug. 10, 2011) ("the Supreme Court has not explicitly found that Batson's holding encompasses sexual orientation."); Kaeo-Tomaselli v. Butts, No. 11-00670, 2013 WL 399184, at *5 (D. Haw. Jan. 31, 2013) ("Plaintiff puts forth no evidence that her status as a hermaphrodite, or transgender female, qualifies her as a member of a protected class.  Nor has this court discovered any cases in which transgendered individuals constitute a 'suspect' class."); Julia C.

Maddera, Note, Batson in Transition: Prohibiting Peremptory Challenges on the Basis of Gender Identity or Expression, 116 Colum. L. Rev. 195, 195 (2016) ("While peremptory challenges upon the basis of race, ethnicity, and gender have been held unconstitutional, and peremptory strikes upon the basis of sexual orientation have been regarded as increasingly suspect after United States v. Windsor, attorneys remain free to use peremptory challenges to remove potential jurors from the venire upon the basis of their gender identity or expression.").  In fact, that remains the status of the law today.

Smith bases his peremptory challenge claim on J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 114 S. Ct. 1419 (1994), whereby the Supreme Court extended the protections of Batson to peremptory strikes based on gender.  J.E.B. at 130-131, 114 S. Ct. at 1422 ("Today we reaffirm what, by now, should be axiomatic: Intentional discrimination on the basis of gender by state actors violates the Equal Protection Clause, particularly where, as here, the discrimination serves to ratify and perpetuate invidious, archaic, and overbroad stereotypes about the relative abilities of men and women.").  The Supreme Court made clear in that opinion that the "conclusion that litigants may not strike potential jurors solely on the basis of gender does not imply the elimination of all peremptory challenges.  . . .  Parties may still remove jurors who they feel might be less acceptable than others on the panel: gender simply may not serve as a proxy for bias.  Parties may also exercise their peremptory challenges to remove from the venire any group or class of individuals normally subject to 'rational basis' review."  Id. at 143, 114 S. Ct. at 1429.  At the time of the SJC's decision, no settled Supreme Court case law dictated that either sexual orientation or gender identity were considered suspect classes requiring more than

rational basis review.[9]  See Bd. of Educ. of the Highland Local Sch. Dist. v. U.S. Dep't of Educ.,

208 F. Supp. 3d 850, 872 (S.D. Ohio 2016) ("The Supreme Court has not decided whether

transgender status is a quasi-suspect class under the Equal Protection Clause."); SmithKline

Beecham Corp. v. Abbott Labs., 740 F.3d 471, 480 (9th Cir. 2014) (holding that prior to United

States v. Windsor, 570 U.S. 744, 133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013), the court was bound

to apply rational basis review to an equal protection claim on the basis of sexual orientation");

see also Windsor, 570 U.S. at 754, 133 S. Ct. 2683-2684 (finding that the question of whether

"heightened scrutiny should apply to laws that classify on the basis of sexual orientation" was

"still being debated and considered in the courts. . . .").  While extending gender protections to

sexual orientation or gender identity may be a logical extension of Supreme Court law, the

habeas court is not free to make such an extension.  White v. Woodall, 572 U.S. at 426, 134 S.

Ct. at 1706.  Thus, the peremptory challenge complained of in this case, whether on the basis of

sexual orientation or gender identity, was not clearly contrary to the Supreme Court's holding

in J.E.B.

The court is aware that circuit courts have recently found that peremptory challenges

based on sexual orientation violate Batson and that discrimination based on gender identity

constitutes unconstitutional sex discrimination.  See SmithKline Beecham Corp. v. Abbott Labs.,

740 F.3d at 475-476 ("We hold that the exclusion of the juror because of his sexual orientation

violated Batson and we remand for a new trial."); Glenn v. Brumby, 663 F.3d 1312, 1320 (11th

---

[9]  As Smith recognizes, "[t]he Supreme Court has not considered whether discriminatory state action against transgendered persons is reviewed applying the heightened equal protection scrutiny afforded gender-based classifications in general."  (Docket No. 202 ¶ 20).

Cir. 2011) ("We conclude that a government agent violates the Equal Protection Clause's prohibition of sex-based discrimination when he or she fires a transgender or transsexual employee because of his or her gender non-conformity.").[10]  The Massachusetts state courts were free to reach that conclusion when this habeas matter was stayed so that Smith could raise the issue, as it stood under precedent at that time, before the state court.  The Massachusetts courts elected not to do so, and that conclusion cannot be disturbed on habeas review.  The SJC's decision, at the time it was made, was not contrary to clearly established Supreme Court law.

###   C.   Jury Charge Claim

Smith claims that his rights were violated under the Fourteenth Amendment Due Process clause because the trial judge allegedly instructed and commented to the jury that Smith had been convicted of other shootings even though no such evidence was offered at trial and had been expressly excluded on prior motion.  (Docket No. 45 at 1).  Smith argues that "[t]he introduction of inculpatory evidence by the trial judge after the close of the evidence and

---

[10]  Glenn relies on the Supreme Court's decision in Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989).  In Price Waterhouse, the Supreme Court was considering a sex discrimination case under Title VII of the Civil Rights Act of 1964.  A plurality of the Court reasoned that "[i]n the specific context of sex stereotyping, an employer who acts on the basis of a belief that a woman cannot be aggressive, or that she must not be, has acted on the basis of gender."  Id. at 250, 109 S. Ct. at 1790-91.  Glenn relies on Price Waterhouse in holding that heightened scrutiny applies in reviewing claims of discrimination based on gender identity because "[t]here is [ ] a congruence between discriminating against transgender and transsexual individuals and discrimination on the basis of gender-based behavioral norms."  663 F.3d at 1316.  Although Price Waterhouse was decided prior to the SJC's review of Smith's case, and although courts such as the 11th Circuit in Glenn rely on it to apply heightened scrutiny to gender identity based claims on direct appeal, that reading of Price Waterhouse is an extension of the plurality's holding in that case and "fair minded jurists could disagree" that gender identity based claims warrant heightened scrutiny based on that decision.  See Wetzel v. Lambert, at 524, 132 S. Ct. at 1198.  As explained, supra, while applying such an extension may be logical, the court is not free to do so on habeas review.  See White v. Woodall, 572 U.S. at 426, 134 S. Ct. at 1706.

after closing arguments violated XIV Amendment due process by denying Mr. Smith his 'right to reasonable notice of a charge against him, and an opportunity to be heard in his defense -- a right to his day in court.' These 'rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel.'" (Id. at 52 (internal citation omitted)). Smith contends that "[t]he SJC's erroneous determination that the instruction at issue was 'ambiguous' was both 'contrary to . . . clearly established federal law' and 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" (Id.). For the reasons addressed herein, these arguments are not supported by the record.

### Review of the Record

Adjudication of Smith's jury charge claim requires a review of the trial record. At trial, Sergeant Merner of the Boston Police Department testified that he was one of the officers assigned to the anti-gang violence unit. (SA II:592). He testified that he was familiar with identifiable gangs within Boston in the early 1990s. (Id. at 595). With regard to Sergeant Merner's testimony, the trial judge had the following side bar colloquy with the prosecutor:

> THE COURT: I would prefer that you use the term "group."
>
> MR. COFFEY: Certainly, Your Honor.
>
> THE COURT: As opposed to "gang."
>
> MR. COFFEY: All right.
>
> THE COURT: So when you ask your questions, just say "are these members of the Lenox group."
>
> MR. COFFEY: All right.

(Id. at 603).  Sergeant Merner then continued to testify that he was familiar with the group the

Columbia Point Dawgs and with a member of that group named Steven Gaul, the victim in

Smith's case.  (Id. at 605).  He testified that other members of that group were Nathaniel

Fernandes, Mark Crump, and Gervone Snead.  (Id.).  The court then had an additional sidebar

with the prosecutor and defense counsel:

> MR. COFFEY: I came over here, Your Honor, out of an abundance of
> caution.  I was going to ask him if he had become aware of a shooting of
> Mark Crump from Columbia Point, shot in the back right at the corner of
> Lenox and Shawmut, and then three other individuals were shot – Snead,
> Fernandes, and Hightower – all from Columbia Point as well.  The defen-
> dant was ultimately convicted of shooting all those people, I'm not going to
> get into that, just that he was aware of that.
>
> THE COURT: You can ask that and your objection is noted.
>
> MS. JERUCHIM: Thank you.

(Id. at 606).  Sergeant Merner then testified that he was aware of an incident involving a man

named Mark Crump who was shot at Lenox and Shawmut Avenue around March 1991.  (Id. at

606-07).  Sergeant Merner was also aware that Nathaniel Fernandes, Dwight Hightower and

Gervone Snead, all of whom were members of the Columbia Point Dawgs, were also shot in

1991.  (Id.).

During his jury charge, the court gave the following instructions, which alluded to

Sergeant Merner's testimony:

> Now, there was some evidence, and I just by illustration, just because I say
> there was evidence doesn't mean there was evidence at all.  What the
> evidence indicates is what you say it was, so keep that in mind.  But by way
> of illustration, as I recall there was testimony in the case.  And whether the
> testimony is believable or not is up to you.  But there was testimony in the
> case to the effect that, as I recall it, that the defendant was a member of a
> particular group called the Lenox Street group or gang.  And there was also
> other testimony to the effect that David Walker and Kevin Walker and

Steven Kindell were also members of the Lenox Street group.  There was further evidence that the Lenox group hung out near a certain flag pole at 609 to 611 Shawmut Avenue which was in close proximity to the park there, Ramsey or Derby Park, when the killing of Steven Gaul occurred.

There was also evidence introduced as I recall that Steven Gaul, the alleged victim in this case, was a member of the Columbia Point Dawgs, a gang from Columbia Point.

Further evidence was offered to the effect that on March, in March of 1991, Mark Crump, a member of the Columbia gang was shot a[t] Lenox Street and Shawmut Avenue.  And there was further testimony that some people by the name of Hightower and Snead were also shot in November of 1991 in the area.

There was also evidence offered that there was a conflict between the two groups, the Lenox Street group and the Columbia Point group, concerning alleged drug trade in Ramsay Park.

Now, that evidence, as I say, is not offered to show the propensity of the defendant in this case to commit the crime in this case.  It's strictly, this evidence of his prior conduct and subsequent conduct, prior conduct as far as the crime is concerned and subsequent conduct, are offered for a very limited purpose, and you have to consider this very, very closely.  It's only admitted in the case for the limited purposes of the jury's consideration on the issues of joint venture – that is whether or not the defendant was involved in a joint venture with those, with some people to commit the crime charged in this case – the defendant's state of mind, intent, and knowledge and motive with respect to the circumstance of the crime charged in this case, and also for your consideration on the matter of the entire relationship between the defendant and Steven Gaul.

(SA III:285-87).  Defendant moved for a mistrial on the grounds, <u>inter alia</u>, that the judge had attributed bad acts to the defendant that had not been admitted at trial.  (<u>Id.</u> at 311-14).

On his direct appeal, Smith argued that this instruction violated his Fourteenth Amendment rights.  The SJC described Smith's objection as follows:

On appeal, the defendant focuses on the judge's reference to "this evidence of *his* prior conduct and subsequent conduct" [ ].  The defendant argues that this comment necessitates reversal because the judge effectively stated that the defendant had committed the 1991 shootings to

which the judge had referred, even though no evidence linking the
defendant individually to these shootings was introduced at trial.

Smith I at 401-02, 879 N.E.2d at 93.  The SJC then held that:

> The judge's reference to the defendant's "prior conduct and subsequent
> conduct" was ambiguous.  Insofar as the statement might be interpreted to
> include the judge's specific summary of the other shooting evidence, it
> would constitute error.[FN5]  However, the reference followed the judge's
> summary of all the trial evidence relating to gang affiliations and activities,
> not just the shooting, and thus could be understood to indicate that the
> whole of the evidence about the Lenox Street gang might be considered
> prior or subsequent conduct connected to the defendant only as a member
> of that group.  The judge did not link his statement about the defendant's
> prior and subsequent conduct to the shootings in particular, and certainly
> made no explicit reference to the defendant in connection with those
> shootings.  Moreover, the ambiguous statement was just one portion of a
> sentence in a lengthy instruction that began and ended forcefully with the
> point that *all* the evidence about prior and subsequent conduct could not
> be considered as showing the defendant's propensity to commit the crime;
> it was, the judge stated, admitted only for consideration on the issues of
> joint venture, the defendant's motive and state of mind, and the
> relationship between the defendant and the victim.

> "[T]he adequacy of instructions must be determined in light of the over-all
> impact on the jury."  *Commonwealth v. Grant*, 418 Mass. 76, 85, 634 N.E.2d
> 565 (1994), quoting *Commonwealth v. Sellon*, 380 Mass. 220, 231-232, 401
> N.E.2d 1329 (1980).  The challenged instruction is clearly not a model to be
> followed.  However, the evidence of the defendant's guilt in this case,
> primarily supplied by eyewitnesses to the murder, was very strong.  In the
> circumstances, accepting for argument the defendant's interpretation of
> the judge's reference, we are able to conclude that the jury's verdict was
> not "substantially swayed" by the judge's one misstatement, and that the
> error was not prejudicial.  *Commonwealth v. Flebotte*, 417 Mass. at 353,
> 630 N.E.2d 265, quoting *Commonwealth v. Peruzzi*, 15 Mass. App. Ct. 437,
> 445, 446 N.E.2d 117 (1983).

> > [FN5]  In this regard, the reference is akin to the misstatement of
> > evidence by a prosecutor during a closing argument.  See, e.g.,
> > *Commonwealth v. Santiago*, 425 Mass. 491, 499-500, 681 N.E.2d 1205
> > (1997), *S.C.*, 427 Mass. 298, 693 N.E.2d 127 and 428 Mass. 39, 697
> > N.E.2d 979, cert. denied, 525 U.S. 1003, 119 S. Ct. 514, 142 L. Ed. 2d
> > 426 (1998); *Commonwealth v. Kozec*, 399 Mass. 514, 516 n.2, 522,
> > 505 N.E.2d 519 (1987).  The question that arises is whether that error

was prejudicial.  See *Commonwealth v. Flebotte*, 417 Mass. 348, 353, 630 N.E.2d 265 (1994).

The defendant asserts that the error was of constitutional significance, because, in effect, the judge was providing the jury with false evidence, and a conviction based on knowing use of such evidence violates the due process clause of the Fourteenth Amendment to the United States Constitution.  The defendant cites *Donnelly v. DeChristoforo*, 416 U.S. 637, 646, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974), and *Napue v. Illinois*, 360 U.S. 264, 269, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959).  The constitutional argument fails.  The problem presented here is that the judge could be understood to have suggested a fact that was not supported by the trial evidence.  But the fact suggested – that the defendant was responsible for the shootings – was not false: the defendant had indeed been convicted of these shootings.  See note 3, *supra*.  The claimed error did not amount to a denial of due process.

Id. at 402-03, 879 N.E.2d at 94.

In his habeas petition, Smith contends that the SJC's decision was contrary to and an unreasonable application of clearly established federal law, and resulted in a decision that was based on an unreasonable determination of the facts.  (Docket No. 45 at 52-57).  Specifically, Smith challenges the SJC's conclusion that the jury charge was "ambiguous."  (Id. at 52).  He further contends that the jury charge violated his Due Process rights as recognized in Quercia v. U.S., 289 U.S. 466, 53 S. Ct. 698, 77 L. Ed. 1321 (1933), and In re Oliver, 333 U.S. 257, 68 S. Ct. 499, 92 L. Ed. 682 (1948), "to examine the witnesses against him, to offer testimony, and to be represented by counsel" by introducing new and material evidence following the close of evidence to the effect that he committed other uncharged crimes.  (See Docket No. 45 at 52). This court disagrees.

32

## Determination of the Facts

Smith takes exception to the SJC's conclusion that the charge was "ambiguous" and that it did not directly link Smith to the other shootings. "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003). Smith has not provided any evidence, much less clear and convincing evidence, to overcome this presumption. Moreover, the SJC's conclusion is amply supported by a reading of the jury instruction as a whole, which was not a model of clarity. The SJC concluded that the reference to "prior conduct and subsequent conduct" "followed the judge's summary of all the trial evidence relating to gang affiliations and activities, not just the shooting, and thus could be understood to indicate that the whole of the evidence about the Lenox Street gang might be considered prior or subsequent conduct connected to the defendant only as a member of that group." Smith I at 402, 879 N.E.2d at 94. A review of the judge's full instruction, as quoted above, shows that the reference to prior conduct did not explicitly tie Smith to the other shootings. The SJC's interpretation was not unreasonable and, therefore, cannot be disturbed in this habeas petition.

## Legal Analysis

This court concludes further that the SJC's ruling was not contrary to nor an unreasonable application of Supreme Court law. As an initial matter, the SJC's ruling that the instructions must be reviewed "in light of their overall impact on the jury" is entirely consistent with

Supreme Court law.  In reviewing jury instructions in connection with a habeas petition, the instruction "must be considered in the context of the instructions as a whole and the trial record[,]" and the issue presented is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  Estelle v. McGuire, 502 U.S. 62, 72, 112 S. Ct. 475, 482, 116 L. Ed. 2d 385 (1991) (quoting Cupp v. Naughten, 414 U.S. 141, 147, 94 S. Ct. 396, 400-01, 38 L. Ed. 2d 368 (1973)).  Thus, the SJC applied the appropriate standard.

Moreover, the SJC's conclusions are amply supported by the record.  As detailed above, it is far from clear that the trial judge linked the defendant to the other shootings at all, or that he otherwise added any new "evidence" to the record.  In addition, the SJC's conclusion that evidence of the defendant's guilt, primarily through the testimony of eye witnesses, was "very strong" is further supported by the record.  Even assuming that the trial judge erroneously characterized the defendant's involvement in prior incidents, there is no basis for the habeas court to disturb the SJC's conclusion that the jury was not improperly swayed by any misstatement.

The cases relied on by Smith do not compel a different result.  In Quercia, the Supreme Court set limits on what a trial judge can assert in a jury charge.  The Court ruled that "[i]n charging the jury, the trial judge is not limited to instructions of an abstract sort.  It is within his province, whenever he thinks it necessary, to assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence, by drawing their attention to the parts of it which he thinks important, and he may express his opinion upon the facts, provided he makes clear to the jury that all matters of fact are submitted to their determination."  Quercia, 289 U.S. at 469, 53 S. Ct. at 699.  The Court explained further that "[i]n commenting upon testimony

[the judge] may not assume the role of a witness.  He may analyze and dissect the evidence, but he may not either distort it or add to it.  His privilege of comment in order to give appropriate assistance to the jury is too important to be left without safeguards against abuses."  Id. at 470, 53 S. Ct. 699.  The Court in Quercia found error where "the trial judge did not analyze the evidence; he added to it, and he based his instruction upon his own addition."  Id. at 471, 53 S. Ct. at 700.

At issue in Quercia was the following jury charge:

> And now I am going to tell you what I think of the defendant's testimony.  You may have noticed, Mr. Foreman and gentlemen, that he wiped his hands during his testimony.  It is rather a curious thing, but that is almost always an indication of lying.  Why it should be so we don't know, but that is the fact.  I think that every single word that man said, except when he agreed with the Government's testimony, was a lie.

Id. at 468, 53 S. Ct. at 698.  The SJC's conclusion that the trial judge in Smith's case did not overstep the boundaries of appropriate comment is not contrary to or an unreasonable application of Supreme Court law as defined in Quercia.

As an initial matter, to the extent that, as the SJC concluded, the judge's reference to other shootings in his jury charge "could be understood to indicate that the whole of the evidence about the Lenox Street gang might be considered prior or subsequent conduct connected to the defendant only as a member of that group[,]" the judge was not inserting new evidence — he was summarizing the evidence testified to by Sergeant Merner and instructing the jury on how they may use and evaluate that evidence.  Smith I at 402, 879 N.E.2d at 94.  In addition, the judge instructed the jury that they were the "sole and exclusive judges of the facts" and that "just because I say there was evidence doesn't mean there was evidence at all.  What the evidence indicates is what you say it was, so keep that in mind."  (SA III:246, 285).

Further, even if the judge's remarks are read to have added some evidence, his comments did not result in a fundamentally unfair trial.  Unlike Quercia, this is not a case where the trial judge "actively injected himself into the entire trial proceeding" or "made extremely prejudicial comments that pervaded the overall fairness of the trial and which tended to accentuate and emphasize the government's case."  Alidani v. Dooley, 365 F.3d 635, 640 (8th Cir. 2004).  Nor did the judge make "extremely egregious and prejudicial" comments about the defendant's credibility.  Id.  Smith has not met his burden of establishing that the SJC's decision finding no violation of the defendant's rights to a fair trial was contrary to or an unreasonable application of Supreme Court law.  See id.; see also United States v. Paiva, 892 F.2d 148, 159 (1st Cir. 1989) (although judge "impermissibly exceeded the limitations on his power to comment" by adding evidence about the meaning of a field sobriety test, the error was harmless).

Smith's reliance on In re Oliver, is similarly unavailing.  In that case, the Supreme Court rejected a conviction made in secret based on a judge acting alone outside of the public view, and the Court discussed general principles of Due Process which Smith invokes here.  In re Oliver involved the following scenario:

> [T]he petitioner was called as a witness to testify in secret before a one-man grand jury conducting a grand jury investigation.  In the midst of petitioner's testimony the proceedings abruptly changed.  The investigation became a "trial," the grand jury became a judge, and the witness became an accused charged with contempt of court—all in secret.  Following a charge, conviction and sentence, the petitioner was led away to prison—still without any break in the secrecy.  Even in jail, according to undenied allegations, his lawyer was denied an opportunity to see and confer with him.  And that was not the end of secrecy.  His lawyer filed in the State Supreme Court this habeas corpus proceeding.  Even there, the mantle of secrecy enveloped the transaction and the State Supreme Court ordered him sent back to jail without ever having seen a record of his testimony, and without knowing all that took place in the secrecy of the judge's chambers.

36

In re Oliver, 333 U.S. at 272-73, 68 S. Ct. at 507.

In response to this secret tribunal, the Supreme Court held that "[i]n view of this nation's historic distrust of secret proceedings, their inherent dangers to freedom, and the universal requirement of our federal and state governments that criminal trials be public, the Fourteenth Amendment's guarantee that no one shall be deprived of his liberty without due process of law means at least that an accused cannot be thus sentenced to prison." Id. at 273, 68 S. Ct. at 507. The Court held that "[a] person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense – a right to his day in court – are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel. Id., 68 S. Ct. at 507-08.

In the instant case, the SJC's holding that "[t]he claimed error did not amount to a denial of due process" was not contrary to the settled law in In re Oliver. See Smith I at 402 n.5, 879 N.E.2d at 94 n.5. In the instant case, Smith had an opportunity to challenge Sergeant Merner's testimony about group affiliations and related shootings. As detailed above, the SJC's conclusion that the trial judge did not add testimony linking Smith to prior shootings is amply supported by the record and, even if there was an error, it did not result in a violation of Smith's Due Process rights. The basic Due Process rights afforded by In re Oliver were present at Smith's trial. There is no basis to disturb the state court's ruling in connection with this habeas petition.

## IV. <u>CONCLUSION</u>

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that Smith's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be DENIED.[11]

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

---

[11] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days after being served with this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985). Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).